**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Demetrius Antwan Wilson,

     Plaintiff,

v.

Joseph M. Arpaio, et al.,

     Defendants.

No. CV-14-01613-PHX-JAT

**ORDER**

   Pending before the Court is the April 20, 2015 Report and Recommendation ("R&R") by Magistrate Judge Mark Aspey. (Doc. 37).

## I. Background

   Plaintiff is a pretrial detainee at Fourth Avenue Jail in Phoenix, Arizona. (Doc. 1). His original complaint was filed on July 17, 2014; he amended this complaint on November 20, 2014. (Doc. 1); (Doc. 9). Plaintiff now moves to amend his complaint a second time. (Doc. 23). Plaintiff alleges that Defendants have violated his Eighth and Fourteenth Amendment rights by improperly treating his colostomy and by not providing adequate medical and sanitation supplies. (Doc. 23, Ex. 2 at 3-12A). Plaintiff requests injunctive relief, asking for a colostomy reversal, paid for by Defendants, at a hospital of his choosing, and damages of $2,500,000. (*Id.* at 6).

   The Magistrate Judge issued his R&R regarding Plaintiff's Proposed Second Amended Complaint ("PSAC") on April 20, 2015, recommending that the Court allow

the amendment and dismiss Counts One, Three, Ten, Eleven, Thirteen, Fifteen, and Seventeen, and Defendants Frye and Piirinen. (Doc. 37). Plaintiff objects to these recommended dismissals. (Doc. 43).

## II. Standard of Review

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*); *accord Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object."). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [R&R] to which objection is made.").

## III. Motion to Amend

Plaintiff has already amended once as a matter of course; therefore he can only amend by written consent of the opposing party, or by leave of the Court. Fed. R. Civ. P. 15(a); (Doc. 9). The Court should freely give leave to amend "when justice so requires." *Id.* In making this determination, the Court should consider: "'(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment, and (5) whether plaintiff has previously amended its complaint.'" *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). Each factor is not given equal weight; "[f]utility of amendment can, by itself, justify the denial

of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The most important factor in this analysis is prejudice to the opposing party. *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

"[T]he 'rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant. Presumably unskilled in the law, the *pro se* litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel.'" *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). This leniency is amplified in civil rights cases. *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987).

"A district court abuses its discretion by denying leave to amend where the complaint's deficiencies could be cured by naming the correct defendant." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013). "If the identity of any defendant is unknown, 'the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id.* (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

### A.   Bad Faith

Defendants have the burden of proving that Plaintiff's amendment was made in bad faith. *See Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988). Defendants assert that Plaintiff's proposed amendments "are made in bad faith," but provide no supporting evidence or explanation. (Doc. 32 at 11). Defendants thus fail to meet their evidentiary burden, and the amendment cannot be characterized as being made in bad faith. (Doc. 32 at 11).

### B.   Undue Delay

Plaintiff filed his First Amended Complaint on November 20, 2014, (Doc. 9), and his PSAC on March 2, 2015, (Doc. 23). The Court finds that this minimal time period does not constitute undue delay. *Compare Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding undue delay where plaintiff filed an amended

complaint nearly two years after the initial complaint was submitted), *with DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185, 187−88 (9th Cir. 1987) (finding no undue delay where the plaintiff filed a second amended complaint on March 7, 1986 and a third amended complaint in April of 1986).

Furthermore, Plaintiff's PSAC was made within the May 15, 2015 deadline set forth in the Magistrate Judge's February 18 scheduling order. (Doc. 22).[1] Consequently, the amendment was made within a time period reasonably expected by the parties. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (finding undue delay where an amendment was proposed "several months after the stipulated deadline for amending" the complaint). Accordingly, Plaintiff did not generate undue delay in filing his amendment.

### C.    Prejudice to the Opposing Party

Defendants bear the burden of proving that prejudice exists. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). They have not alleged how the amendment would give rise to prejudice, and thus have not met their evidentiary burden. (Doc. 32 at 11).

Furthermore, prejudice most often results when the defendant would have to engage in additional discovery. *See, e.g.*, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (finding prejudice where amendment would require "further discovery" and would delay the proceedings); *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (finding prejudice to the opposing party where amendment would require "additional discovery, briefing, and argument" which would create a "lapse of time" in litigation); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (finding prejudice where amendment would require additional discovery). Because granting the amendment would not necessitate additional discovery, and because

---

[1] While the Court recognizes that the Magistrate Judge's scheduling order was subsequently abrogated pending the disposition of this Order (Doc. 53), presumably the entire litigation schedule will now shift further into the future. Therefore, because the deadlines set in the scheduling order were expected, they serve as an example of reasonable lengths of time for the purposes of amendment.

Defendants did not meet their evidentiary burden, the Court concludes that Defendants will not be prejudiced if the Court allows Plaintiff to amend.

### D.    Futility of the Amendment

"A district court does not err in denying leave to amend where the amendment would be futile . . . [or] would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted). "However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Defendants Perez and Quaid argue that amendment would be futile because Plaintiff's claims are not permissible under A.R.S. §§ 12–821 and 12–821.01, which bar "any claim against a public entity or public employee unless the claimant files a notice of claim within 180 days of the incident in which the claim arose." (Doc. 32 at 8); *accord* Ariz. Rev. Stat. Ann. §§ 12–821, 12–821.01. Since these statutes regulate state claims, and Plaintiff's claims derive from the U.S. Constitution, they do not render the amendment futile. *See West v. United States*, No. CV–14–00254–PHX–DGC, 2015 WL 427715, at *2–3 (D. Ariz. Feb. 2, 2015) (applying A.R.S. § 12–821.01(A) to plaintiff's state law malicious prosecution claim, but not to plaintiff's federal claims under 42 U.S.C. §§ 1983, 1985).

In addition, Defendants Perez and Quaid argue that amendment would be futile, because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and because Defendants "medical director admin," and the "external referees" are entitled to qualified immunity. (Doc. 32 at 10–11). Assuming that Defendants are correct that a portion of Plaintiff's claims are invalid, this would not justify rejecting the entire amendment. If Defendants wish to dismiss portions of the PSAC, they may file a motion for summary judgment, or a motion to dismiss. Additionally, the Court in this order conducts the mandatory screening of the PSAC, including an analysis of Defendants' qualified immunity claims. A motion to amend is

1    not the juncture at which to present arguments of partial futility.

2        Finally, the amendment avoids futility by remedying the pleading deficiencies that

3    existed in Counts One through Six and Eleven through Sixteen in Plaintiff's First

4    Amended Complaint, which were noted in the Court's screening order. (Doc. 8); *see infra*

5    Part IV.B. *Compare* (Doc. 9), *with* (Doc. 23). Because the amendment remedies the fatal

6    deficiencies, and thus revives claims previously dismissed without prejudice, the

7    amendment as a whole cannot be considered futile.

8        **E.      Whether Plaintiff Has Previously Amended His Complaint**

9        The Court's "discretion to deny the motion [to amend] is particularly broad

10   where . . . a plaintiff previously has *been granted leave* to amend." *Griggs v. Pace Am.*

11   *Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999) (emphasis added). It is true that Plaintiff has

12   already amended his complaint once, but this should not weigh heavily against his motion

13   to amend. The previous amendment was as a matter of course,[2] and this factor is

14   normally applied when the court has already granted a plaintiff one or more opportunities

15   to amend. Fed. R. Civ. P. 15(a); *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980)

16   (emphasis added) ("[A] district court has broad discretion to grant or deny leave to

17   amend, particularly where the court *has already given* a plaintiff one or more

18   opportunities to amend his complaint."). Thus, Plaintiff's single amendment as a matter

19   of course does not strongly militate against granting his motion to amend.

20       In sum, considering that the amendment was not proposed in bad faith, that

21   Plaintiff did not create undue delay in filing his amendment, that Defendants would not

22   be prejudiced by amendment, that amendment as a whole would not be futile, and that

23   Plaintiff's previous amendment does not strongly weigh against him, the Court

24   accordingly accepts the Magistrate Judge's recommendation to allow Plaintiff's

25   amendment.[3]

26   _____

27   [2] While Plaintiff did previously move to amend, he was not required to do so
     under the Federal Rules, therefore it is better to interpret this original amendment as an
28   amendment as a matter of course, and not as an amendment with leave of the Court.

     [3] While the Magistrate Judge does not explicitly recommend that amendment be

**IV.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or an officer or an employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2). Section 1915A incorporates the 12(b)(6) standards to determine whether a claimant has failed to state a claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).

To state a claim, a pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338,

---

permitted, allowing the amendment is a necessary precondition to his recommendations that the Court dismiss certain Counts and Defendants contained within that amendment.

342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)). The Court must resolve any doubt in the *pro se* plaintiff's favor. *Pliler*, 627 F.3d at 342 (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*)).

The Court may not review materials external to the pleadings, including prison regulations, when considering whether Plaintiff has stated a claim. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) (finding that introduction of prison regulations converted a motion to dismiss for failure to state a claim into a motion for summary judgment).

Section 1983 is a vehicle which allows a plaintiff to assert claims of constitutional violations against state officials. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014); 42 U.S.C. § 1983. To successfully construct a § 1983 claim, a plaintiff "must plead that (1) the defendants [were] acting under color of state law [and] (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

Color of law is implicated where a person "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50. Employees act under color of law even when they "abuse[] the position given to [them] by the State." *Id.* In this case all alleged abuses were perpetrated by jail employees in the discharge of their duties to maintain the safety and sanitation of the jail. Thus, the PSAC claims that the alleged abuses were performed under color of law. (*See* Doc. 23).

**A.    Counts One, Three, Five, Eight, Ten, Eleven, Thirteen, Fifteen, and Seventeen**

Plaintiff's Eighth Amendment claims, which allege deliberate indifference to Plaintiff's serious medical needs, are properly considered under the Fourteenth Amendment, as Plaintiff was a pretrial detainee when the alleged constitutional violations occurred. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72, n.40 (1977))). Furthermore, Plaintiff's improper Eighth Amendment claims are duplicative of his proper Fourteenth Amendment claims. Therefore, Counts One, Three, Five, Eight, Ten, Eleven, Thirteen, Fifteen, and Seventeen fail to state a claim upon which relief can be granted, and are dismissed with prejudice.

**B.    Counts Two, Four, Six, Seven, Nine, Twelve, Fourteen, Sixteen, and Eighteen**

Because Plaintiff was a pretrial detainee when the complained-of violations occurred, his Fourteenth Amendment Due Process claims are evaluated under the standards of the Eighth Amendment. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Under the Eighth Amendment, "the 'deliberate indifference standard' applies to claims that correction facility officials failed to address the medical needs of pretrial detainees." *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010). The test for deliberate indifference has two-prongs: "First, the plaintiff must show a serious medical need . . . . Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Serious medical need exists where "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992),

*overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*)). Injuries "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059–60. "[L]ack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).

The requisite state of mind for deliberate indifference is one of subjective recklessness. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014); *Farmer v. Brennan*, 511 U.S. 825, 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference." *Olmos v. Stokes*, No. CV 10–2564–PHX–GMS(MEA), 2011 WL 1792953, at *5 (citing *Jett*, 439 F.3d at 1096). "Prison officials are deliberately indifferent when . . . they deny, delay, or intentionally interfere with medical treatment." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (internal quotation marks omitted) (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992), *overruled in part on other grounds as recognized in Snow*, 681 F.3d at 986).

A defendant does not need to be physically present when the medical staff denies a plaintiff's requests; the defendant's "acquiescence in the constitutional deprivations of which the complaint is made" is sufficient to constitute deliberate indifference. *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *accord Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (finding that the doctor who "denied [the plaintiff's] second-level grievance even though he was aware that an optometrist had recommended surgery and that [the plaintiff's] lower-level grievances had been denied despite that

recommendation" was a proper defendant for a deliberate indifference claim); *Norsworthy v. Beard*, No. 14–CV–00695JST, 2015 WL 1478264, at *7–9 (N.D. Cal. March 31, 2015) (finding that the plaintiff stated a valid claim for deliberate indifference against administrators who reviewed and denied the plaintiff's grievance reports requesting sex reassignment surgery); *Johnson v. Valdez*, No. 1:11–CV–00053–BLW, 2013 WL 4494992, at *6 (D. Idaho Aug. 16, 2013) (finding that the plaintiff stated a valid claim against administrators who denied his medical grievance reports); *Michaud v. Bannister*, No. 2:08–CV–01371–MMD–PAL, 2012 WL 6720602, at *10 (D. Nev. Dec. 26, 2012) ("[A] supervisor who denies medical care via a grievance is equally liable as a physicians' panel determining the medical necessity of a particular treatment."). *But see Peralta v. Dillard*, 744 F.3d 1076, 1086–87 (9th Cir. 2014) (*en banc*) (upholding the district court's determination that as a matter of law the Chief Medical Officer who reviewed the plaintiff's second-level appeal was not deliberately indifferent, because the plaintiff could not prove that the Officer was aware of the plaintiff's serious medical need). The necessary causal connection between a defendant and the alleged harm can be sufficiently manifested by a defendant "knowingly refusing to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." *Johnson*, 2013 WL 4494992, at *5 (internal quotation marks omitted) (quoting *Dubner v. City of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001)).

### 1.    Guards and Medical Staff

In Count Two, Plaintiff argues that "John Doe 1 Provider" has repeatedly refused to have Plaintiff's colostomy reversed even though no diagnosis has been made for pain and itching around Plaintiff's stoma, and has not allowed Plaintiff to see a "gastro/stoma specialist." (*See* Doc. 23, Ex. 2 at 4).[4] Because "the existence of chronic and substantial

---

[4] Counts Two, Four, Six, Seven, Nine, Twelve, Fourteen, and Sixteen make claims against one or more of the following Defendants for deliberate indifference to Plaintiff's medical needs through the jail's grievance procedures: Maricopa County Correctional Health Services, "John Doe 2 CH 7/8[,]" "John Doe 4 HS585[,]" "John Doe 5 Medical Director Admin," and the external referees B. Piirinen and Scott Frye. The claims against

pain are examples of indications that a prisoner has a 'serious need for medical treatment'" Plaintiff has plausibly alleged serious medical need. *Michaud*, 2012 WL 6720602, at *3 (quoting *McGuckin*, 974 F.2d at 1059–60). Plaintiff also plausibly alleges that "John Doe 1 Provider" knew of Plaintiff's serious medical need, as Plaintiff had allegedly requested to see a "gastro/stoma" specialist from "John Doe 1 Provider." (Doc. 23, Ex. 2 at 4). By alleging that "John Doe 1 Provider" disregarded this request, Plaintiff plausibly alleges that "John Doe 1 Provider" ignored Plaintiff's serious medical need. (*Id.*). Therefore, Plaintiff states a valid claim against "John Doe 1 Provider" in Count Two.

In Count Four, Plaintiff alleges that throughout the month of June 2014 he was "force[d] to handle [his] own feces with [his] bare hands, without gloves or antibacterial soap, even when [he was] dumping feces in the toilet or cleaning feces off [of the] colostomy bag and wafer." (Doc. 23, Ex. 2 at 5A). Furthermore, Plaintiff alleges that after submitting grievance reports regarding this issue, he only received two pairs of gloves from "John Doe 9 CHS Provider" on Monday, Wednesday, and Friday for changing his colostomy bag, but not for "dumping feces or . . . cleaning feces off [of the] colostomy bag and wafer." (*Id.*). Even assuming that two pairs of gloves were insufficient to maintain sanitary conditions under the Fourteenth Amendment, Plaintiff has not alleged that Defendant "John Doe 9 CHS Provider" was subjectively aware of such insufficiency. Accordingly, Plaintiff has failed to state a claim against "John Doe 9 CHS Provider" in Count Four.

Count Six contains claims regarding incidents on two dates. The first incident occurred on June 23, 2014, when "Officer A8845" allegedly told Plaintiff that "she was tired of [Plaintiff] bitching about [his colostomy]" which Plaintiff alleges was spilling "feces all over [his] stomach and cloth[e]s." (Doc. 23, Ex. 2 at 6A). Allegedly, the officer informed him that "[M]edical [N]urse [M]ary" did not report this issue, which resulted in

---

these Defendants will be addressed separately at the end, as the necessary analysis significantly differs from that which needs to be done for the remaining Defendants.

Plaintiff going about his daily activities—including eating—while covered in feces. (*Id.*). Furthermore, Plaintiff alleges that his wafer came off, causing his intestines to disgorge. (*Id.*). Plaintiffs' allegations regarding being covered in feces and having his colostomy improperly maintained plausibly establishes a serious medical need. *Anderson*, 45 F.3d at 1314. Plaintiff further alleges that "[M]edical [N]urse [M]ary" was aware that he was covered in feces, but did not assist him, or report the issue to other staff members. (Doc. 23, Ex. 2 at 6A). Furthermore, this Count alleges that "Officer A8845" knew of Plaintiff's serious medical condition, because she told Plaintiff that she did not want to hear about Plaintiff's need, and therefore chose to ignore his need rather than treat it. (*Id.*). Therefore, Plaintiff alleges that Defendants were deliberately indifferent to his medical need, thus validly stating a claim against "[M]edical [N]urse [M]ary" and "Officer A8845" in Count Six.

The second incident occurred on August 27, 2014, when "John Doe 7 medical staff"[5] allegedly refused to give Plaintiff supplies for his colostomy. (*Id.*). According to the PSAC, the medical staff member refused to assist Plaintiff, even when she became aware that Plaintiff's colostomy bag had burst, which had caused feces to leak onto Plaintiff's bed. (*Id.*). Plaintiff was allegedly left without medical supplies for roughly five hours. (*Id.*). Being left without medical or sanitary supplies while covered in feces plausibly creates an environment that gives rise to a serious medical need. *Anderson*, 45 F.3d at 1314. This Count, liberally construed, alleges that "John Doe 7 medical staff" was aware of, and disregarded, Plaintiff's serious medical need by alleging that Plaintiff "showed her [the] feces [that] had leake[ed] on[to] [his] bed," and that "John Doe 7 medical staff" did not then assist Plaintiff. (Doc. 23, Ex. 2 at 6A). Accordingly, Plaintiff states a valid claim for deliberate indifference against "John Doe 7 medical staff" in Count Six.

---

[5] While traditionally the placeholder name "Jane Doe" is used for females whose identities are unknown, Plaintiff refers to female medical staff as "John Doe." Therefore, to remain consistent and prevent confusion, the Court will follow Plaintiff's naming conventions.

In Count Seven, Plaintiff alleges the following. On June 20, 2014, "1st Shift Medical Staff Samantha" provided him with an improperly cut wafer, which caused feces to "leak over [his] cloth[e]s and person." (Doc. 23, Ex. 2 at 6B). When Plaintiff alerted "John Doe 8 Staff" of this issue, he was not provided with a new wafer until the next day. Plaintiff alleges that he was not given clothes, gloves, antibacterial soap, or a "red hazard bag." (*Id.*). The PSAC states that Plaintiff had to clean feces from his colostomy bag with his bare hands because "Medical Staff Samantha" would not provide him with a new bag. (*Id.*). Ultimately, Plaintiff allegedly had to dispose of his waste in a public trash can. (*Id.*). Furthermore, as a general matter, Plaintiff claims that the medical staff does not consider his "stoma hanging out of [his] colostomy" to be a "medical emergency" until it becomes infected. (*Id.*). Being covered in feces plausibly rises to the standard of serious medical need. *Anderson*, 45 F.3d at 1314. Furthermore, Plaintiff alleges deliberate indifference by alleging that he reported his need for medical supplies to "John Doe 8 Staff," who did not assist Plaintiff, and that "Medical Staff Samantha" "refused" to give him a new colostomy bag after he asked her for one. (Doc. 23, Ex. 2 at 6B). Thus, by alleging that the parties were aware of Plaintiff's serious medical need and did not assist Plaintiff until hours later, Plaintiff states a valid claim for deliberate indifference against "Medical Staff Samantha" and "John Doe 8 Staff" in Count Seven.

In Count Nine, Plaintiff states that "Graveyard Shift R.[N]. [L]ois refused [him] medical attention" when Plaintiff made it known to "John Doe 9 Officer" that the rash or fungus surrounding his stoma was causing him pain, and that the "colostomy wafer tape" was not sticking, causing his skin to become irritated. (Doc. 23, Ex. 2 at 7B). Furthermore, Plaintiff alleges that due to the defective tape, he could not sleep because he had to hold the wafer onto the stoma to "keep feces from running on[to the] bed." (*Id.*). Being in continual pain is a serious medical need. *Anderson*, 45 F.3d at 1314. Furthermore, Plaintiff alleges that he informed "Graveyard Shift R.[N]. Louis" and "John Doe 9 Officer" of this issue and that they provided no assistance. Therefore, Plaintiff states a valid claims of deliberate indifference against these Defendants in Count Nine.

In Count Twelve, Plaintiff provides two dates when alleged violations occurred. Plaintiff alleges that on August 1, 2014, "John Doe 10 Medical Staff" intentionally gave Plaintiff an incorrectly sized colostomy bag," even though Plaintiff informed her that the bag was not the correct size. (Doc. 23, Ex. 2 at 9A). After a few hours, Plaintiff allegedly contacted the "bubble/tower John Doe II officer" who told Plaintiff that he had to wait. Plaintiff further alleges that similar incidents occurred three times that week, and that because Plaintiff was repeatedly given a colostomy bag which did not fit with his wafer, feces leaked onto his body. (*Id.*). The second incident occurred on November 30, 2014, when "John Doe 12 Medical Staff" allegedly provided Plaintiff with an incorrectly sized colostomy bag, causing feces to again leak onto Plaintiff's body. (*Id.*). Plaintiff alleges that "John Doe 12 Medical Staff" intentionally provided him with incorrectly sized medical supplies. (*Id.*). Being repeatedly covered in feces creates an environment which rises to the level of serious medical need. *Anderson*, 45 F.3d at 1314. Furthermore, because Plaintiff alleges that "John Doe 10 Medical Staff," "John Doe II officer," and "John Doe 12 Medical Staff" were all aware of the issues with the size of Plaintiff's colostomy bag—because Plaintiff apprised them of the repeated *oversight*—and did not attempt to remedy the situation, Plaintiff plausibly alleges that they were deliberately indifferent to Plaintiff's serious medical need. Accordingly, Plaintiff has stated a valid claim for deliberate indifference against "John Doe 10 Medical Staff, "John Doe II officer," and "John Doe 12 Medical Staff" in Count Twelve.

In Count Fourteen, Plaintiff alleges that on August 7, 2014 "John Doe 13 Medical Staff" refused Plaintiff medical care and colostomy supplies, and left Plaintiff covered with feces for an entire day. (Doc. 23, Ex. 2 at 10A). "John Doe 1 Provider" allegedly told Plaintiff that "he wasn't here for [Plaintiff's] pain" and that medical staff would not provide Plaintiff with the colostomy reversal procedure. (*Id.*). Plaintiff's allegations that he was covered in feces for an extended period of time plausibly alleges a serious medical need. *Anderson*, 45 F.3d at 1314. Furthermore, the Court infers from Plaintiff's allegation that "John Doe 13 Medical Staff" "refused" to assist, that Plaintiff alleges

"John Doe 13 Medical Staff" was aware of Plaintiff's serious medical need, and disregarded that need. (Doc. 23, Ex. 2 at 10A). Likewise, the Court infers from Plaintiff's allegations that "John Doe 1 Provider" told Plaintiff that the medical staff was not there for his plain that "John Doe 1 Provider" had subjective knowledge of Plaintiff's serious medical need and disregarded that need. (*Id.*). Therefore, because Plaintiff alleges that "John Doe 13 Medical Staff" and "John Doe 1 Provider" were aware of his serious medical need and disregarded that need, Plaintiff states a valid claim for deliberate indifference against these Defendants in Count Fourteen.

In Count Sixteen, Plaintiff alleges constitutional violations that occurred on two dates. The first incident, which occurred on September 19, 2014, involved "John Doe 15 Medical," who allegedly brought Plaintiff an incorrectly cut wafer with jagged edges, which injured Plaintiff's stoma and caused him to bleed. (Doc. 23, Ex. 2 at 11A). Allegedly, "Officer B1841" informed "John Doe 15 Medical" of the situation, but she did not return with colostomy supplies. (*Id.*). Plaintiff claims that the size of the wafer for his colostomy is in the computer system. (*Id.*). The second incident occurred on December 3, 2014, when "John Doe 16 Medical" allegedly provided Plaintiff with an incorrectly sized wafer. (*Id.*). Living in an unsanitary environment and being caused injury rises to the level of serious medical need. *Anderson*, 45 F.3d at 1314. Furthermore, because Plaintiff alleges that "John Doe 15 Medical" and "John Doe 16 Medical" were aware of Plaintiff's serious medical need—as Plaintiff informed them of his need—but did not provide him with assistance, Plaintiff plausibly alleges deliberate indifference. Therefore, Plaintiff validly states a claim against "John Doe 15 Medical" and "John Doe 16 Medical" in Count Sixteen.

Count Eighteen also describes two incidents where alleged constitutional violations occurred. On September 23, 2014, "John Doe 17 Medical" allegedly did not provide Plaintiff with a new wafer before court, which resulted in Plaintiff's wafer completely coming off. (Doc. 23, Ex. 2 at 12A). Allegedly, Plaintiff had to go to Court manually holding the old wafer onto his intestines. (*Id.*). Plaintiff believes that this

incident put him at risk for obtaining disease. (*Id.*). Furthermore, Plaintiff claims that the computer provides the medical staff with a list of the supplies Plaintiff needs before he goes to court. (*Id.*). The second incident occurred on October 14, 2014, when "Officer Perez A969" allegedly provided Plaintiff with an improperly cut wafer. (*Id.*). Allegedly, Plaintiff informed "Officer Perez A969" that the wafer would not work, however "Officer Perez A969" did not provide Plaintiff with a new wafer. (*Id.*). Plaintiff alleges that he informed "Officer Perez A969" that he would need new clothes, because feces had spilled onto them, but that he was not provided with new clothes. (*Id.*). Being covered in feces for an extended period of time rises to the level of serious medical need. Furthermore, because Plaintiff alleges that the necessary medical supplies were listed in the computer, that Plaintiff informed "John Doe 17 Medical" and "Officer Perez 1969" that he was covered in feces and was not provided with the proper medical supplies, and that no remedial action was taken, Plaintiff plausibly alleges that "John Doe 17 Medical" and "Officer Perez 1969" were deliberately indifferent to Plaintiff's serious medical need. Therefore, Plaintiff properly states a claim for deliberate indifference against "John Doe 17 Medical" and "Officer Perez 1969" in Count Eighteen.

## 2.   Grievance Officers

The PSAC makes several allegations that Defendants John Doe 2 CH 7/8," "John Doe 4 HS585," "John Doe 5 Medical Director Admin," and the external referees B. Piirinen and Scott Frye violated Plaintiff's rights by negatively ruling on his grievances. (Doc. 23, Ex. 2) The Magistrate Judge concluded that Plaintiff failed to state a claim against these Defendants because "Plaintiff does not allege[] specific facts that indicate that Defendants . . . personally deprived Plaintiff of his federal constitutional rights." (Doc. 37 at 7).[6] The Court disagrees.

Liberally construed, these claims allege that the party reviewing Plaintiff's

---

[6] The Magistrate Judge only recommends dismissing the external referees Defendants Frye and Piirinen; however, in Plaintiff's PSAC "John Doe 2 CH 7/8," "John Doe 4 HS585," and "John Doe 5 Medical Director Admin" are all grouped together with the referees. Therefore, it follows that all of these Defendants should be considered together under the same analysis.

grievance was aware that he was not being provided with adequate medical and sanitary supplies—because the reviewer read the grievance—and did nothing to assist in remedying the situation. (*See* Doc. 23, Ex. 2 at 3–12A). Which, if true, constitutes deliberate indifference. *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011). Therefore, given the extremely liberal approach the Court is to take with *pro se* civil rights plaintiffs, the Court finds that Plaintiff states a valid claim against Defendants "John Doe 2 CH 7/8," "John Doe 4 HS585," "John Doe 5 Medical Director Admin," and the external referees B. Piirinen and Scott Frye.

Finally, Plaintiff does not state a cognizable legal claim against Maricopa County Correctional Health Services. As it was noted in the Court's screening order of Plaintiff's First Amended Complaint, "[b]ecause Maricopa County Correctional Health Services is not a municipal corporation, a local governing body or a private corporation, it is not a 'person' amenable to suit under § 1983." (Doc. 8 at 9); *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978). For these same reasons, Defendant Maricopa County Correctional Health Services is dismissed.

The Court is entitled to add parties "on just grounds," and thus could join Maricopa County itself. Fed. R. Civ. Pro. 21. *See Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2014) (substituting Maricopa County as a defendant when the plaintiff incorrectly sued for injunctive relief against Maricopa County Sheriff's Office). However, such joinder would be fruitless, because a municipality is only responsible for a constitutional violation if "action [is] taken pursuant to an official municipal policy of some nature," and Plaintiff does not claim that there was a driving policy behind the alleged constitutional violations. *Monell*, 436 U.S. at 691; (Doc. 23, Ex. 2). Therefore, Maricopa County will not be joined in this action without specific claims showing that the alleged constitutional violations were the result of municipal policy.

### C.    Qualified Immunity

The Court must dismiss any of Plaintiff's claims which seek "monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(2). "[G]enerally . . .

government officials performing discretionary functions [are shielded by] . . . qualified immunity . . . from civil damages." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity does not extend to injunctive relief. *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993). This protection provides "immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Therefore, the determination of whether immunity applies should be resolved as early as possible. *Id.* at 201 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)).

To ascertain whether qualified immunity applies, the Court must determine: "(1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010) (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009)). The Court has the discretion to address these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "Officers are entitled to qualified immunity if they reasonably misapprehend how the law would govern in their particular situation." *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *vacated on other grounds*, 131 S. Ct. 1812 (2011), *opinion reinstated in relevant part*, 656 F.3d 897 (9th Cir. 2011) (citing *Saucier*, 533 U.S. at 205). A right is not clearly established if district courts within a circuit are split on the issue. *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject [officials] to money damages for picking the losing side of the controversy."); *Ahscroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate.").

As established above, Plaintiff alleges facts sufficient to show that the jail employees violated his Fourteenth Amendment rights. *See supra* Part IV.B. Therefore, the first prong for denying qualified immunity is met with regard to all Defendants. Thus, the only issue remaining is whether it was clearly established that Defendants' conduct was deliberately indifferent, and thus unlawful.

With regard to Defendants involved in the grievance process ("John Doe 2 CH 7/8," "John Doe 4 HS585," "John Doe 5 Medical Director Admin," and the external referees B. Piirinen and Scott Frye), the district courts within the Ninth Circuit are split as to whether a grievance officer can be deliberately indifferent for failing to rule favorably on a grievance. *Nicholson v. Finander*, No. CV 12–9993–FMO (JEM), 2014 WL 1407828, at *7 (C.D. Cal. Apr. 11, 2014). Thus, these Defendants are protected by qualified immunity because it is not "clearly established" whether the officers' conduct was "unlawful in the situation he [or she] confronted." *Saucier*, 533 U.S. at 202; *accord Wilson*, 526 U.S. at 618. Therefore, Plaintiff's claims for damages against these grievance officers are dismissed with prejudice. Nevertheless, Plaintiff's injunctive claims against these Defendants remain.

With regard to all other Defendants, a reasonable officer would not conclude that allowing an inmate to be covered in feces for an extended period of time without sanitary supplies is lawful. *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) ("[L]ack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment"); *Bodnar v. Riverside Cty. Sherrif's Dep't*, No. EDCV 11–291–DSF (OP), 2014 WL 2737815, at *8–9 (C.D. Cal. Mar. 28, 2014) (holding that an issue with the prison toilets—whereby flushing would cause waste to splash into and out of toilets in adjacent cells—combined with "refusal to provide cleaning supplies beyond [a] bar of soap maintained by a prisoner for personal hygiene, amounts to a violation of Eighth Amendment principles."); *Buckley v. Alamedia*, No. 1:04–CV–05688–OWW–GBC PC, 2011 WL 7139570, at *23 (E.D. Cal. Dec. 20, 2011) ("Enduring a feces covered cell for three days is grave enough to form the basis of a

viable   Eighth   Amendment   claim."); *Sherman   v.   Gonzalez*,   No. 1:09–CV–00420–LJO–SKO PC, 2010 WL 2791565, at *7–8 (E.D. Cal. July 2010) (holding that it is clearly established that exposing a prisoner to sewage for five hours without drinking water poses a serious medical need). Therefore, qualified immunity does not apply to the remaining Defendants.

### D.   Injunctive Relief

To state a claim for injunctive relief a plaintiff "must demonstrate 'that he is realistically threatened by a *repetition* of the violation'" of his federal rights. *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (quoting *Armstrong v. Davis¸* 275 F.3d 849, 860–61 (9th Cir. 2001)) (emphasis in original). "A threat of repetition can be shown 'at least two ways'" *Id.* "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Id.* "Second, the Plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of plaintiffs' federal rights.'" *Id.* "[W]here the defendants have repeatedly engaged in injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement." *Armstrong*, 275 F.3d at 861.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by repeatedly leaving him covered in feces for extended periods of time, and by not providing him with sanitary supplies. (*See* Doc. 23, Ex. 2). Therefore, because the Defendants allegedly left Plaintiff covered in his feces without sanitary supplies multiple times in the past, the realistic repetition requirement is satisfied. Thus, Plaintiff states a valid claim for injunctive relief against the remaining Defendants.

### V.   Conclusion

Accordingly,

**IT IS ORDERED** that the Magistrate Judge's Report and Recommendation (Doc. 37) is **ACCEPTED AS MODIFIED** above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Leave to Amend (Doc.

23) is granted.

**IT IS FURTHER ORDERED** that Counts One, Three, Five, Eight, Ten, Eleven, Thirteen, Fifteen, and Seventeen are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant Maricopa County Correctional Health Services is dismissed with prejudice.

**IT IS FURTHER ORDERED** that the claims for damages against Defendants "John Doe 2," "John Doe 4," "John Doe 5," B. Piirinen, and Scott Frye are dismissed with prejudice.[7]

**IT IS FURTHER ORDERED** that Count Four is dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff be allowed to participate in discovery to determine the identities of Defendants "[M]edical [N]urse [M]ary," "Officer A8845," John Doe 1, John Doe 2, John Doe 4, John Doe 5, John Doe 7, John Doe 8, John Doe 9, John Doe 10, John Doe 12, John Doe 13, John Doe 15, John Doe 16, John Doe 17, and thereafter be allowed to attempt service on these Defendants.

Dated this 29th day of June, 2015.

James A. Teilborg
Senior United States District Judge

---

[7] While the claims for damages against these four Defendants are dismissed, the claims for injunctive relief are not. Therefore, these Defendants are not dismissed entirely from this action.